UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD PORTERFIELD,

              Plaintiff,                                        Hon. Ellen S. Carmody

v.

                                                                 Case No. 1:11-cv-164

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

_____/

## OPINION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. On May 23, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #9).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 56 years old at the time of the ALJ's decision.  (Tr. 14, 105).  He successfully completed high school and worked previously as a welder, machine operator, electroplater, and general laborer.  (Tr. 18, 116, 140-46, 151-57).  Plaintiff applied for benefits on December 6, 2005, alleging that he had been disabled since November 22, 2005, due to stress.  (Tr. 103-10, 115, 179).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 20-102).  On February 18, 2009, Plaintiff appeared before ALJ William Decker with testimony being offered by Plaintiff and vocational expert, Richard Riedl. (Tr. 401-28).  In a written decision dated May 11, 2009, the ALJ determined that Plaintiff was not disabled.  (Tr. 12-19).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 4-7).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On March 24, 2003, Plaintiff participated in intelligence testing conducted by Richard King, Ed.D. (Tr. 246-47).  Dr. King reported that Plaintiff "was alert to the various testing cues" and "was able to follow directions and instructions with no observed difficulty."  (Tr. 246).  Testing

revealed that Plaintiff had a verbal IQ of 73, a performance IQ of 73, and a full scale IQ of 70. (Tr. 247). The doctor diagnosed Plaintiff with borderline intellectual functioning. (Tr. 247).

On March 24, 2003, Plaintiff was examined by Wayne Kinzie, Ph.D. (Tr. 255-60). Plaintiff reported that he was not suffering from any physical impairments, but was experiencing "a good deal of difficulty with stress." (Tr. 255). Plaintiff also reported that, other than an antibiotic for a recent sinus infection, he was not taking any medications and, moreover, had never received psychological or psychiatric treatment. (Tr. 255). Plaintiff reported that his employment history has "been pretty scattered" due to incarceration and alcohol and drug abuse. (Tr. 255-56). Plaintiff reported that he last used cocaine "about 10 months" previously and currently "drinks a couple of times a week" because "it helps me to calm down." (Tr. 256). The results of a mental status examination were unremarkable and Plaintiff was diagnosed with: (1) generalized anxiety disorder (mild to moderate); (2) dysthymic disorder (mild); (3) history of alcohol abuse; and (4) borderline intellectual functioning. (Tr. 257-59).

On June 3, 2003, Julia Crowther, Ph.D. completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 249-51). Plaintiff's abilities were characterized as "moderately limited" in eight categories. (Tr. 249-51). With respect to the remaining 12 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 249-51).

On January 23, 2006, Plaintiff was examined by William Shauman, M.A. (Tr. 275-79). Plaintiff reported that he was seeking "disability benefits [because of] a history of mental stress, substance abuse problems and physical complaints." (Tr. 275). Specifically, Plaintiff reported that

4

he had been diagnosed with hepatitis C and high blood pressure. (Tr. 275). Plaintiff further reported that his "nerves are bad" and he experiences "mental stress" because he "can't get a job because of [his] felonies." (Tr. 275). Plaintiff appeared "depressed and with flat affect," but otherwise the results of a mental status examination were unremarkable. (Tr. 276-78). Plaintiff was diagnosed with: (1) adjustment disorder with mixed anxiety and depressed mood; and (2) polysubstance dependence, early full remission. (Tr. 278).

In late September 2006, Plaintiff was sent to jail after testing positive for marijuana use in violation of his parole. (Tr. 337-38). Plaintiff was released from jail eight days later at which point he was admitted to Pine Rest Christian Mental Health Services for inpatient treatment of substance abuse. (Tr. 337-44). Upon admission, Plaintiff was diagnosed with: (1) alcohol dependence; (2) depressive disorder; (3) cannabis abuse; and (4) cocaine abuse. (Tr. 339). Plaintiff was discharged from treatment on December 4, 2006, after successfully completing treatment. (Tr. 342). Upon discharge, it was noted that Plaintiff "has a high rate of relapse and recidivism which may improve if he follows through with his aftercare instructions and completes outpatient services." (Tr. 343).

On October 29, 2008, Plaintiff was examined by Wayne Kinzie, Ph.D. (Tr. 307-11). Plaintiff reported he was experiencing stress and difficulty sleeping. (Tr. 307). Plaintiff reported that he was presently taking Trazodone and was currently receiving outpatient treatment through Heartside Clinic. (Tr. 307). Plaintiff reported that he last used alcohol "approximately three to four weeks ago" and last used crack cocaine "sometime in 2007." (Tr. 307-08). Plaintiff "appeared to lose focus" and "appeared easily confused," but otherwise the results of a mental status examination were unremarkable. (Tr. 308-10). Plaintiff was diagnosed with: (1) dysthymic disorder (moderate);

(2) cocaine abuse history; and (3) alcohol abuse history. (Tr. 310).

On November 6, 2008, Dr. Zahra Yousuf completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 319-32). Determining that Plaintiff suffered from dysthymic disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 320-28). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 329). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 329). Dr. Yousuf also observed that Plaintiff suffered from a substance addiction disorder. (Tr. 327).

Dr. Yousuf also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 315-17). Plaintiff's abilities were characterized as "moderately limited" in eight categories. (Tr. 315-17). With respect to the remaining 12 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 315-17).

On January 20, 2009, Plaintiff "presented at network180 seeking an unspecified level of mental health services." (Tr. 346). When asked "if he was seeking outpatient or case management services," Plaintiff reported that he "was more concerned about receiving assistance with filing for SSI disability." (Tr. 346). Plaintiff reported that he "often experiences suicidal ideation" but "is not receiving any medical treatment." (Tr. 346). When asked about his use of

6

substances, Plaintiff reported that he last used alcohol a few days ago, last used cocaine four months ago, and last used crystal meth four months ago.  (Tr. 347-48).  Plaintiff was diagnosed with: (1) alcohol dependence; (2) cocaine dependence; (3) depressive disorder; and (4) cannabis abuse/intoxication.  (Tr. 349).  The examiner observed that Plaintiff "was more interested in receiving assistance in applying for disability than to engage in [mental health] services."  (Tr. 349). Plaintiff was "provided information on finding assistance for completing SSI disability forms."  (Tr. 349).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from: (1) depressive disorder, not otherwise specified; (2) borderline intellectual functioning; and (3) polysubstance dependence, which may be in partial remission, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 14-16).  The ALJ concluded that because Plaintiff was able to perform his past relevant work as an electroplater and machine operator, he was not disabled as defined by the Social Security Act.  (Tr. 16-19).

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work at all exertional levels, but is limited to simple, repetitive tasks not requiring more than minimal interaction with public or more than moderate interaction with co-workers.  (Tr. 16).  After reviewing the relevant medical evidence, the Court

---

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

A vocational expert testified at the administrative hearing that if Plaintiff were limited to the extent

recognized by the ALJ's RFC determination, he could still perform his past relevant work as an

electroplater and machine operator.  (Tr. 410-11, 424-25).  Accordingly, the ALJ determined that

Plaintiff was not disabled as defined by the Social Security Act.

> a.      The ALJ's Decision that Plaintiff does not Satisfy Section 12.05 of the
>         Listing of Impairments is Supported by Substantial Evidence

Plaintiff asserts a single issue on appeal, that he is entitled to disability benefits

because he satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of

Impairments.  Plaintiff bears the burden to demonstrate that he satisfies the requirements of a listed

impairment.  *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) (the claimant

bears the burden of proof through step four of the sequential disability determination procedure);

*Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 527 (6th Cir., Aug. 26, 2003) (claimant bears

the burden of establishing that he satisfies a listed impairment).  Section 12.05 of the Listing

provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly
> subaverage general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental period; i.e.,
> the evidence demonstrates or supports onset of the impairment
> before age 22.
>
> The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied.
>
> A.      Mental incapacity evidenced by dependence upon
>         others for personal needs (e.g., toileting, eating,
>         dressing, or bathing) and inability to follow directions,

such that the use of standardized measures of intellectual functioning is precluded;

OR

B.      A valid verbal, performance, or full scale IQ of 59 or less;

OR

C.      A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

OR

D.      A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

     1.      Marked restriction of activities of daily living; or

     2.      Marked difficulties in maintaining social functioning; or

     3.      Marked difficulties in maintaining concentration, persistence or pace; or

     4.      Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2008).

Plaintiff asserts that he satisfies section 12.05(C). As noted above, testing conducted in March 2003 revealed that Plaintiff possessed a verbal IQ of 73, a performance IQ of 73, and a full-scale IQ of 70. That this test was not administered until after Plaintiff attained the age of 22 is of no consequence. Moreover, Plaintiff suffers from an emotional impairment which imposes additional and significant work-related limitations, as the ALJ recognized.

While Plaintiff satisfies the criteria articulated in subsection (C), he must also satisfy the requirements articulated in the introductory paragraph of Section 12.05.  20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05).  Specifically, Plaintiff must establish that he satisfies the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05.  *See, e.g., West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 697-98 (6th Cir., July 5, 2007) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22); *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007) (same); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (same).

The record contains no evidence that Plaintiff experienced deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22 or at anytime thereafter.  Neither Plaintiff's care providers nor any of the medical professionals who examined the record in this case concluded that Plaintiff was mentally retarded, satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05, or experienced deficiencies in adaptive functioning prior to attaining the age of 22.  On the other hand, Dr. King and Dr. Kinzie both determined that Plaintiff instead suffered from borderline intellectual functioning.  The ALJ likewise determined that Plaintiff suffered from borderline intellectual functioning, a conclusion that enjoys substantial support in the record.  As the Sixth Circuit has observed, a diagnosis of borderline intellectual functioning is inconsistent with a diagnosis of mental retardation and, therefore, precludes a finding that the requirements of Section 12.05 have been met.  *See Cooper*, 217 Fed. Appx. at 451.

Furthermore, the fact that Plaintiff maintained employment throughout much of his adult life is inconsistent with the conclusion that he is mentally retarded.  Such indicates that Plaintiff did not experience deficiencies in adaptive behavior prior to age 22, or thereafter for that matter. *See Burrell v. Comm'r. of Soc. Sec.*, 2000 WL 1827799 at \*2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"); *Adkins v. Astrue*, 226 Fed. Appx. 600, 605 (7th Cir., Apr. 10, 2007) (claimant possessing an 8th grade education and "gainfully employed until the age of forty-one" not disabled under section 12.05); *Wright v. Astrue*, 2011 WL 1486208 at \*7 (N.D. Ind., Mar. 31, 2011) (when assessing whether claimant satisfies section 12.05, the court must consider more than IQ scores alone and must also consider claimant's work history and other activities); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (claimant who possessed a 10th grade education, and who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his adult life"); 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment).  Finally, Plaintiff's reported activities are inconsistent with his claim of mental retardation. (Tr. 130-39, 197-204).  Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff does not satisfy this Section 12.05 of the Listing of Impairments.

b.      Plaintiff is not Entitled to a Remand

12

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 385-400). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

The evidence in question consists of the following: (1) treatment notes from Hope Network Behavioral Health Services for the period May 28, 2009, through June 4, 2009; and (2) treatment notes from Life Guidance Services dated May 29, 2009. Remand for further consideration of this evidence is not appropriate.

First, Plaintiff has not requested that the Court remand this matter for consideration

13

of this evidence.  Plaintiff has, therefore, waived any such argument.  *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at \*30 n.29 (D. Mass., Nov. 18, 2010) (same).  Second, it is not reasonable to conclude that consideration of this evidence would have resulted in a different outcome.  The evidence in question neither calls into question the ALJ's determination nor bolsters Plaintiff's argument that he suffers from mental retardation.  Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  February 28, 2012                                    /s/ Ellen S. Carmody
                                                           ELLEN S. CARMODY
                                                           United States Magistrate Judge